Appellant, Henley Health Care, a division of Maxxim Medical, Inc., fka Henley International, Inc., dba NeuroCare Medical Supplies Division, dba NTron, dba NTron Electronics ("NeuroCare"), is in the business of providing durable medical equipment, supplies and related products to medical patients including workers' compensation claimants. Appellees are the Bureau of Workers' Compensation ("Bureau") and the Industrial Commission of Ohio ("Commission"). This case involves reimbursement to NeuroCare from appellees for medical equipment provided to workers' compensation claimants through their physicians.
NeuroCare delivers durable medical equipment and supplies to its participating physicians, and the physicians prescribe and deliver the products to the patient/claimant. The patient/claimant then assigns his or her rights to reimbursement from appellees to NeuroCare. In order to effectuate such reimbursement, NeuroCare would send an invoice to appellees, listing the equipment and supplies provided to the patient/claimant, and appellees would review the invoices and reimburse NeuroCare. Pursuant to Ohio Adm. Code 4121-7-31, the Bureau is obligated to pay for equipment, materials, goods, supplies or services incurred by a workers' compensation claimant no later than thirty days after receipt by the Bureau of a proper invoice for the amount due.
On July 2, 1990, appellees issued new policies and procedures for obtaining reimbursement and changed the rate at which certain medical equipment would be reimbursed. Appellees issued "The Ohio Bureau of Workers' Compensation Medical Services Division Health Care Provider Billing and Reimbursement Manual" ("billing manual"), which required providers to obtain prior authorization before seeking reimbursement for certain durable medical equipment and supplies. The billing manual required providers to use appellees' billing code system when submitting invoices. The billing manual also included other requirements, such as billing supplies for a TENS unit (transcutaneous electrical nerve stimulator, a low-frequency nerve-stimulating device to control pain) on a monthly basis (bundling) and reducing the reimbursement level for TENS units and supplies. For example, a TENS unit reimbursement was reduced from $650 to $436.31 per unit. This new rate was known as a "fee maxima."
In December 1991, appellees issued Provider Bulletin 91-15 ("provider bulletin"), which reiterated many of the changes in the billing manual and added a verification policy which required providers to submit a letter from the patient/claimant verifying the amount and type of supplies.
On September 15, 1992, appellees issued a medical policy statement discontinuing reimbursement for TEAM units (Tannenbaum electroanalgesia method, a medium-frequency nerve-stimulating device used to control pain). On October 23, 1991, appellees issued another medical policy statement discontinuing reimbursement for fluidotherapy (a dry heat modality used to increase blood flow, promote wound healing and improve range of motion).
In June 1992, NeuroCare was referred to appellees' fraud investigation unit because of numerous alleged violations of the billing manual and provider bulletin. A report issued on February 1, 1993, concluded that appellees had overpaid NeuroCare $233,893.40 and the amount was recouped from NeuroCare through the withholding of reimbursement payments from January 1, 1994, through July 1994.
On April 22, 1994, NeuroCare filed an action in the Franklin County Court of Common Pleas seeking both a declaration that the billing manual and provider bulletin were illegally promulgated and an order enjoining appellees from withholding future reimbursements and enforcing the rules. NeuroCare also sought recovery of the $233,893.40 that appellees had recouped. NeuroCare alleged that appellees had withheld payments of $233,893.40 due NeuroCare for supplies to patients/claimants. NeuroCare alleged that the billing manual and Provider Bulletin 91-15 were invalid because they had not been properly promulgated under Chapter 119 of the Revised Code for the reason that, unless specifically exempted from the R.C. Chapter 119 procedure, any rule or amendment adopted without the R.C. Chapter 119 procedure is invalidated by R.C. 119.02. NeuroCare also argues that appellees' internal policy of placing providers on review was improper. Placing a provider on review involved taking invoices submitted by that provider from the normal payment process and submitting them to an assigned employee for review. This process delayed any reimbursement.
The common pleas court dismissed the action finding it did not have subject matter jurisdiction since the actual relief requested was monetary in nature. NeuroCare appealed to this court. This court found that assuming NeuroCare's allegations were true, the cause of action was for equitable relief because NeuroCare's request for reimbursement of money withheld pursuant to alleged invalid rules was equitable in nature and not a request for money damages. Thus, the common pleas court had jurisdiction. See Henley Health Care v. Ohio Bur. ofWorkers' Comp. (Feb. 23, 1995), Franklin App. No. 94APE08-1216, unreported (1995 Opinions 692). Appellees appealed to the Supreme Court of Ohio but the appeal was dismissed sua sponte.Henley Health Care v. Ohio Bur. of Workers' Comp. (1995),72 Ohio St.3d 1548.
While the appeal to the Supreme Court of Ohio was pending, NeuroCare filed this action in the Ohio Court of Claims, seeking a declaration that the rules were unlawful, an injunction to prevent appellees from enforcing the invalid rules, for damages for alleged tort actions, and attorney fees and costs. Once the Supreme Court dismissed appellees' appeal, NeuroCare dismissed the common pleas action.
The Court of Claims bifurcated the issues of liability and damages. NeuroCare filed a motion for partial summary judgment seeking a declaration that the rules were invalid. On July 2, 1996, the Court of Claims issued an entry declaring that the following rules were not properly promulgated, pursuant to R.C. Chapter 119, and were invalid:
 i) The Bureau's Medical Services Division Health Care Provider Billing and Reimbursement Manual, 1990 edition, chapter 6;
 ii) The Bureau's Provider Bulletin 91-15, and any other provider bulletins purporting to regulate TENS units, supplies and batteries prior to the effective date of the TENS Rule O.A.C. 4123-7-34, September 1, 1993, as well as TEAMS units, supplies and batteries and fluidotherapy;
 iii) The Bureau's Criteria For New Technology, Evaluation and Approval;
 iv) The Bureau's Medical Policy Statement dated September 15, 1992 regarding TEAM units, and any other documents purporting to regulate TEAM units, supplies or batteries; and
 v) The Bureau's October 23, 1991 Memorandum from Dr. Joseph Sudimack, Jr., regarding fluidotherapy, and any other documents purporting to regulate fluidotherapy.
See Entry, July 2, 1996, and Agreed Entry Identifying Issues for the Court's Consideration in the First Phase of the Bifurcated Trial, June 3, 1996.
After finding the rules to be invalid, the Court of Claims conducted a trial. On June 11, 1998, the Court of Claims entered its Decision and Judgment Entry, finding in favor of appellees. The Court of Claims found injunctive relief was inappropriate because the General Assembly had amended R.C.4121.32(D), effective September 1, 1995, rendering future relief unnecessary. The court also found a contractual relationship existed between the parties which had altered the reimbursement rates through the parties' course of dealing. NeuroCare filed a notice of appeal and raises the following assignments of error:
A. First Assignment of Error
 The Trial Court erred when it ignored the "law of the case" and previous holding of this Court that Appellant's claim for reimbursement of money withheld pursuant to invalid rules are equitable in nature and not an action in contract for money damages[.]
B. Second Assignment of Error
 The Trial Court erred when it characterized Appellant's claim to be "contractual in nature[.]"
C. Third Assignment of Error
 The Trial Court erred when it held that under amended Revised Code § 4123.32(D), effective September 1, 1995, the Bureau and the Commission are no longer legally required to employ rulemaking procedures setting forth reimbursement rates and reimbursement procedures.
D. Fourth Assignment of Error
 The Trial Court erred when it applied R.C. § 4123.32(D), effective September 1, 1995, retroactively to deny Appellant its equitable right to reimbursement and held that the statute "nullified" this Court's holding in Chiropractic Assn [Ohio State Chiropractic Assn. v. Ohio Bur. of Workers' Comp. (Jan. 21, 1993), Franklin App. No. 92AP-874, unreported (1993 Opinions 30).]
E. Fifth Assignment of Error
 The Trial Court erred when it failed to declare the Bureau's unwritten "provider on review policy" and the Administrator's March 21, 1991 Letter regarding fee maxima to be "invalid rules" and to enjoin the Bureau from enforcing them against providers[.]
F. Sixth Assignment of Error
 The Trial Court erred when it denied Appellant injunctive relief and failed to enjoin the Appellee's use of the Declared Invalid Rules to regulate Appellant, refused to reimburse Appellant for the monies unlawfully recouped and refused to reimburse Appellant for the amounts denied it on properly submitted invoices based upon the Declared Invalid Rules and reduced fee maxima as set forth in the Administrator's March 21, 1991 Letter[.]
G. Seventh Assignment of Error
 The trial court erred when it ignored this Court's decision in Henley Health Care, supra, [Henley Health Care v. Ohio Bur. of Workers' Comp. (Feb. 23, 1995), Franklin App. No. 94APE08-1216, unreported (1995 Opinions 692)] which held that Appellant's claim is for reimbursement based upon the equitable doctrine of specific performance, and denied Appellant the amount of recoupment and the amounts due on its proper invoices which were denied by the Bureau based upon the Declared Invalid Rules and reduced fee maxima[.]
H. Eighth Assignment of Error
 The Trial Court erred in not finding Appellant had a right to be fully reimbursed based upon Ohio Administrative Code Rules 4121-17-31 and 4123-7-31, with interest[.]
I. Ninth Assignment of Error
 The Trial Court erred when it failed to hold that the Bureau has been unjustly enriched by virtue of its recoupment of funds due and owing NeuroCare and by its retention of funds which should have been paid to NeuroCare but for the Bureau's wrongful denial of bills[.]
J. Tenth Assignment of Error
 The Trial Court erred when it failed to hold that NeuroCare is entitled to reimbursement of the monies due it and the monies wrongfully recouped because of the Bureau's conversion of NeuroCare's property[.]
K. Eleventh Assignment of Error
 The Trial Court erred when it failed to hold that NeuroCare is entitled to recover from the Bureau based upon the Bureau's negligent regulation and enforcement of its invalid rules[.]
L. Twelfth Assignment of Error
 The Trial Court erred when it failed to hold that NeuroCare is entitled to prejudgment interest on all amounts it recovers[.]
In NeuroCare's first, second, third, fourth and seventh assignments of error, NeuroCare contends that the Court of Claims erred in its judgment in favor of appellees. The issue presented in these assignments of error concerns appellee's rules regarding reimbursement for durable medical equipment, supplies and related products, including TENS units, batteries and supplies for the TENS units, TEAM units, batteries and supplies for the TEAM units, fluidotherapy and ChemGel (an over-the-counter medicated ointment used in conjunction with fluidotherapy). In Ohio State Chiropractic Assn. v. Ohio Bur.of Workers' Comp. (Jan. 21, 1993), Franklin App. No. 92AP-874, unreported (1993 Opinions 30), this court found Chapter 13 of the billing manual and Provider Bulletin Nos. 91-6 and 91-7 were rules, which were required to be promulgated pursuant to R.C. Chapter 119. Since they had not been, the rules were invalidated. In following Ohio State Chiropractic, the Court of Claims found the billing manual and Provider Bulletin 91-15 invalid but determined that the decision in Ohio StateChiropractic had been nullified by the Ohio General Assembly, through its amendment of R.C. 4121.32(D). R.C. 4121.32(D), effective September 1, 1995, provides as follows:
 The bureau shall establish, adopt, and implement policy guidelines and bases for decisions involving reimbursement issues including, but not limited to, the adjustment of invoices, the reduction of payments for future services when an internal audit concludes that a health care provider was overpaid or improperly paid for past services, reimbursement fees, or other adjustments to payments. These policy guidelines and bases for decisions, and any changes to the guidelines and bases, shall be set forth in a reimbursement manual and provider bulletins.
 Neither the policy guidelines nor the bases set forth in the reimbursement manual or provider bulletins referred to in this division is a rule as defined in section 119.01 of the Revised Code.
The Court of Claims found that the General Assembly expressed, with this language, a clear intention that the billing manual and Provider Bulletin 91-15 were specifically exempted from being rules and were, therefore, no longer invalid.
However, NeuroCare requested reimbursement from the recoupment of $233,893.40 appellees had taken during January to July 1994, in addition to an injunction preventing appellees from enforcing the rules. R.C. 1.48 provides that "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." R.C. 4121.32(D) does not state that it is retrospective. Thus, its application is prospective only and cannot be applied to support appellees' recoupment during 1994. NeuroCare's first, second, third, fourth and seventh assignments of error are well-taken to this extent.
For the foregoing reasons, NeuroCare's first, second, third, fourth and seventh assignments of error are sustained, the fifth, sixth, eighth, ninth, tenth, eleventh and twelfth assignments of error are overruled as moot, and the judgment of the Ohio Court of Claims is reversed and remanded to that court for a trial to determine the amount wrongfully withheld from reimbursements to NeuroCare.
Judgment reversed and cause remanded.
BROWN and TYACK, JJ., concur.